SUSAN M. CHEHARDY, Judge.
 

 |2This is a medical malpractice suit in which the plaintiff and a group of defendants appeal a summary judgment in favor of another group of defendants. We reverse and remand.
 

 Jo Kent Taylor, widow of Gary M. Taylor, filed suit on June 24, 2008 against J. Philip Boudreaux, M.D.; Baton Rouge General Medical Center; James Fletcher, M.D.; and Fletcher’s employer, Baton Rouge Radiology Group, Inc. The following facts are derived from the allegations of the petition and other documents in the record:
 

 On February 8, 2006 Dr. J. Philip Bou-dreaux performed surgery for cancer on Gary Taylor at Baton Rouge Medical Center.
 
 [1]
 
 Dr. Boudreaux ordered a “post-procedure, inter-operative, full abdominal series of x-rays to confirm that no sponges, instruments, needles, or laparotomy pads were retained within the abdomen and that the sponge and needle counts were correct.” The radiologist, Dr. James D. Fletcher, reported the x-rays were clear.
 

 | :iMr. Taylor was discharged from the hospital on February 17, 2006 and returned home, but his condition did not improve. He returned to Baton Rouge Medical Center on March 6, 2006, again under the care of Dr. Boudreaux. A CT scan of his abdomen revealed a foreign object had been left in his body during the February 8th surgery. Dr. Boudreaux performed a second surgery on Mr. Taylor on March 9, 2006 to remove the foreign object, which turned out to be a gauze pad or pads.
 

 
 *218
 
 Following that surgery, Mr. Taylor developed an infection. His condition deteriorated over the following months and he died on July 14, 2006.
 

 Mrs. Taylor filed a complaint with the Patient’s Compensation Fund on February 16, 2007. In argument to the medical review panel, Dr. Boudreaux contended that the gauze pad or sponge count was correct, leaving as the only inference that the nurses employed by Baton Rouge General Hospital failed to meet the appropriate standards of care. Dr. Boudreaux further contended that a post-operative x-ray was run solely to confirm the absence of all foreign materials in Mr. Taylor’s abdomen and the correctness of the gauze pad/ sponge count, and that the x-ray confirmed the absence of any foreign bodies and the correctness of the sponge count, leaving as the only inference a breach in the standard of care by Dr. James Fletcher.
 

 The medical review panel rendered a decision on June 9, 2008 finding that Dr. J. Philip Boudreaux failed to comply with the appropriate standard of care as charged in the complaint, because there was a foreign body left in the patient at the time of surgery. The panel concluded the conduct complained of was a factor of the resultant damages because the patient required an additional operation, but it did not contribute to the patient’s death, which was due to progression of his cancer.
 

 |/fhe panel concluded that Baton Rouge General Hospital and Dr. Fletcher did not fail to meet the applicable standard of care. As to Baton Rouge General Hospital, the panel found “an incorrect count was reported to the surgeon by the nursing staff’; as to Dr. Fletcher, the panel stated that “Dr. Fletcher reported two possible foreign bodies on the intraopera-tive studies. Only one drain was placed in the patient.”
 

 Plaintiff filed this suit on June 24, 2008. After filing an answer, Dr. Fletcher and Baton Rouge Radiology Group, Inc. (hereafter collectively called “Fletcher”) filed a Motion for Summary Judgment. In support of the motion Fletcher filed affidavits and a copy of the medical review panel’s opinion. Fletcher listed as Uncontested Facts that the medical review panel found that Dr. Fletcher did not deviate from the applicable standards of care in the treatment of Mr. Taylor; that Plaintiffs claims against Baton Rouge Radiology Group, Inc. are limited to claims of vicarious liability for the acts and/or conduct of Dr. Fletcher; and that Plaintiff has no expert testimony or other evidence whatsoever that Dr. Fletcher breached the standard of care.
 

 The first affidavit was by Dr. Fletcher himself; in it he stated as follows:
 

 A. My treatment of the patient was limited to review of two portable intraoperative radiographs submitted simultaneously for interpretation on February 8, 2006. These studies included an abdominal radi-ograph (KUB) and a portable chest radiograph (PCXR). According to the reported clinical history, these studies were performed for an “instrument count.”
 

 B. Although the KUB did not include the entire upper abdomen, the PCXR did include the upper abdomen. With the combination of both studies, the entire abdomen was able to be evaluated. A handwritten Temporary Radiology Report was sent to the patient’s operating room nurse at the time the PCXR and KUB were dictated. The handwritten report notes under Radiologist’s |sImpression: “KUB: radioo-paque drain LUQ.? Penrose RUQ. No metal instrument in abdomen.
 
 *219
 
 PCXR: Rij catheter (arrow indicating courses toward) SVC. No PTX.” Further, the PCXR and KUB reports were also officially typed and made available in the patient’s chart and identified the findings of the respective studies.
 

 C. As set forth in my dictated report for the KUB study, I reported, “[mjultiple surgical clips within the left upper quadrant. Foley catheter. No radioopaque metal instrument is demonstrated. Bowel gas pattern appears unremarkable. Patient’s nurse was informed by written report at the time of the interpretation.” For the CXR study, I reported, “[cjomparison is made to February 7, 2006. Endotracheal tube terminates approximately 4 cm above the carina. Right internal jugular vascular catheter terminates in the SVC. There is a nasogastric tube in place. Normal heart size. Imaged lungs appear clear. Noted is a curvilinear drain which may be a Penrose drain right upper quadrant and drain in the upper quadrant. Patient’s nurse was informed by written report at the time of interpretation.”
 

 D. That was the extent of my involvement with the treatment and/or care of Mr. Taylor as it relates to the claim filed against me.
 

 Dr. Fletcher’s affidavit continued with statements that at all relevant times, he possessed the expected degree of knowledge and skill of a physician licensed to practice radiology, and utilized reasonable care and diligence, and his best judgment, in applying that skill and knowledge in this patient’s treatment and/or care; that his involvement with the treatment and/or treatment of the patient was well within the standard of care; that the claim against him was subject to a medical review panel proceeding, and the panel rendered a unanimous decision in his favor,
 

 Dr. Fletcher’s affidavit was supported by affidavit of Dr. David Walker, who was a member of the medical review panel proceeding in this case. Dr. Walker attested he has been board-certified and practicing medicine in the field of | (¡radiology for 26 years; he was directly involved in rendering the panel decision in this case; he reviewed the medical records and other materials submitted by the parties, discussed the treatment at issue with the other members of the panel, discussed legal and procedural matters with the attorney chairman of the panel, and rendered a medical opinion in favor of Dr. Fletcher as to the treatment and/or care Dr. Fletcher provided to the decedent.
 

 Fletcher asserted they are entitled to be dismissed from this suit because Plaintiff failed to identify an expert witness to refute the assertion of Dr. Fletcher and the members of the medical review panel that he did not meet the applicable standard of care. Further, Plaintiff failed to respond to Fletcher’s Request for Admission of Fact within the delay allowed by law. As such, Fletcher asserted, the requests are deemed admitted, and Plaintiff has no expert to support her claim that the treatment or services rendered by Dr. Fletcher to Mr. Taylor did not meet the applicable standard of care. Accordingly, Fletcher asserted they are entitled to summary judgment because Plaintiff will fail to carry her burden of proof at trial.
 

 In opposition, Plaintiff asserted the pertinent questions are whether Dr. Fletcher correctly interpreted and reported the x-rays to the surgeon, Dr. Boudreaux, and/or whether Dr. Fletcher knew or should have known that the x-rays may not have visualized the correct area. Plaintiff filed her own affidavit in opposition to the motion
 
 *220
 
 for summary judgment, in which she stated that Dr. Boudreaux told her and her husband on March 6, the day before the surgery to remove the foreign object, that the x-ray taken post-operatively on February 8 was of the wrong area. She argued that raised the question of fact as to whether Dr. Fletcher should have recognized that the film did not fully identify the area sought to be visualized.
 

 17Pr. Boudreaux and his employer, the State of Louisiana through the Louisiana State University Health Sciences Center, opposed the motion for summary judgment by arguing that Dr. Fletcher, the radiologist, had failed to visualize two retained gauze pads in the postoperative x-ray. Dr. Boudreaux asserted that the x-ray did not adequately visualize all required areas. In his affidavit, Dr. Boudreaux claimed that Dr. Fletcher did not take a full abdominal series of x-rays, did not include the entire upper abdomen, and he was not told by either Dr. Fletcher or the nurses that a complete abdominal series was not taken as ordered. Further, Dr. Boudreaux stated, he was not shown the Temporary Radiology Report. In addition, he reviewed with the nurses the operative report of February 8, 2006, recording a correct sponge count; if the sponge count eventually was recorded as incorrect, the record was altered post-operatively, after the close of the patient, and after the written operative report was reviewed by Dr. Bou-dreaux, the director of nursing, and the head OR nurse.
 

 In response to the Movers’ requests for admission, Dr. Boudreaux admitted he “did not personally speak with,” “have any conversation directly with,” or “have any verbal communication with” Dr. Fletcher on February 8, 2006 regarding Mr. Taylor.
 

 The district court granted the motion for summary judgment, giving oral reasons for judgment as follows:
 

 Base[d] upon the review of the record and the pleadings filed, I do find persuasive the fact that no expert in the field of radiology can step forward and tell the Court that Doctor Fletcher breached his standard of care to the patient. I understand the arguments with regard to the communication, but at this stage I don’t believe that you have presented sufficient facts to put this issue in dispute. I’m granting the motion for summary judgment for those reasons.
 

 Plaintiff appealed; Dr. Boudreaux and the State also appealed.
 

 |sIn her brief Plaintiff adopts all arguments made by Boudreaux and the State (hereafter collectively called “Boudreaux”).
 

 Boudreaux contends the trial court erred by granting the motion for summary judgment because there are genuine issues of material fact that should be determined by the finder of fact.
 

 Boudreaux argues expert testimony is not necessary where a physician commits an “obvious careless act,” and that lack of communication is obvious negligence. Boudreaux asserts the substantive change in results from clear to a possible foreign body required Dr. Fletcher to confirm his communication to Dr. Boudreaux. Bou-dreaux contends it is a breach in the standard of care that involves the substance of the information, not the review or interpretation of films. Accordingly, he argues, this lack of communication is an obvious breach that requires no additional expert testimony.
 

 In support of the argument, Boudreaux refers to the standards of the American College of Radiology, specifically the ACR Practice Guideline for Communication of Diagnostic Imaging Findings, section I, Introduction, page 3 (Revised 2005, Res. 11). Boudreaux attached a copy of the relevant
 
 *221
 
 portions of the Practice Guideline to their brief as Exhibit F.
 

 Fletcher has filed a Motion to Strike in this Court, on the ground that the ACR Practice Guideline is not part of the record on appeal. Fletcher points out the Practice Guideline was not among the papers filed in the district court in opposition to the motion for summary judgment, and it is not a self-authenticating document. Because this Court cannot receive new evidence on appeal, Fletcher argues the Practice Guideline cannot be considered, and both Exhibit F and the arguments based on it in Boudreaux’s appellate brief should be stricken.
 

 1¡/The Motion to Strike is granted. As Fletcher points out, this Court has no jurisdiction to receive new evidence on appeal.
 
 Palermo v. Morrison Cafeteria,
 
 94-659 (La.App. 5 Cir. 12/28/94), 648 So.2d 1071. Accordingly, it was improper for Boudreaux to include the document as an exhibit to the brief, and to make arguments based on it because neither the documents nor the arguments were presented to the trial court.
 

 Nevertheless, we find a valid basis for reversing the summary judgment. The primary argument by Plaintiff and Boudreaux is that Dr. Fletcher committed an obviously careless act in his treatment of the patient because he initially interpreted the diagnostic studies as “clear,” but subsequently changed his interpretation in a handwritten Temporary Radiology Report without informing Dr. Boudreaux. Dr. Fletcher’s report and the information contained in it, as well as his actions, are the crux of the dispute, yet neither the Temporary Radiology Report nor any report was among the documents provided in support of the motion for summary judgment. Rather, both the proponent and the opponents of the motion relied on affidavits, without including the underlying documents on which the statements in the affidavits were based.
 

 That absence of links in the chain of evidence must defeat the motion for summary judgment. The case, as presented on this motion, was not shown to be ripe for summary judgment.
 

 Accordingly, (1) the Motion to Strike is granted; (2) the judgment is reversed and the case is remanded for further proceedings. Costs of this appeal are assessed against the appellees, James D. Fletcher, M.D. and Baton Rouge Radiology Group.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Mr. Taylor had been diagnosed with neu-roendocrine tumor, carcinoid syndrome, and pancreatic primary carcinoma with liver metastases. The surgery involved six procedures: a distal pancreatectomy and splenecto-my, a takedown of splenic flexure, an open cholecystectomy, partial resection of the left lateral segment of the left lobe for two tumors, an ultrasound guided radiofrequency ablation of a third tumor in the right lobe of the liver, and an excision of the retroperitone-um and mesenteric tumor implants. The total operative time was 8.5 hours.